**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

-----------------------------------------------------------------

| | | |
|---|---|---|
| ANTHONY DAVIS | : | |
| 9103 Empire Avenue | : | CASE. NO.: |
| Cleveland, OH 44108 | : | |
| | : | JUDGE: |
| Plaintiff, | : | |
| vs. | : | **COMPLAINT** |
| | : | |
| CITY OF CLEVELAND | : | **(with jury demand)** |
| c/o City of Cleveland Law Department | : | |
| 601 Lakeside Avenue East, Suite 106 | | |
| Cleveland, OH 44114 | | |

and

ANGELO CALVILLO, Chief of the Cleveland
Division of Fire
c/o City of Cleveland Law Department
601 Lakeside Avenue East, Suite 106
Cleveland, OH 44114

and

JOHN AND JANE DOES 1-10
(addresses unknown)

Defendants.

----------------------------------------------------------------- X

## **INTRODUCTION**

This case is about Defendants' discriminatory practices that seek to and have the effect of

thinning the ranks of Black/African American firefighters. Moreover, Defendants' discriminated

against Plaintiff due to his disability and failed to provide an accommodation.  As more fully set

below, Defendants unlawful actions violated Plaintiff's Federal and State Rights.

## PRELIMINARY STATEMENT

1. This is an action to remedy discrimination based on disability, race, color, and national origin pursuant to the provisions of the Title VII, Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), and for the violation of Plaintiff's constitutional rights to be free from racial, gender, and disability discrimination.

2. Furthermore, this is an action in which Plaintiff seeks relief for Defendants' violation of the American with Disabilities Act ("ADA") under color of state law, of the rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Fourteenth Amendments to the United States Constitution, and the laws of the State of Ohio.

3. Plaintiff also complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. seq. ("Title VII"), and the laws of the State of Ohio pursuant to R.C. § 4112.02 et seq., based upon statutory and supplemental jurisdiction of this Court, seeking relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated and retaliated against by his employer on the basis of disability, color, race, sex, and national origin.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f) (3), and 28 U.S.C. § 1331 and the Civil Rights Act of 1866 and 1871, which give this Court jurisdiction for each statute, the damages, exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

5. The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Northern District of Ohio, specifically, Cleveland, OH.

6.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7.  The EEOC determined that Defendants did violate Federal Law and discriminated against Plaintiff.

8.  A Right to Sue letter was issued to Plaintiff and Plaintiff files this action within the required time.

## PARTIES

9.  Plaintiff is a resident of Cleveland, Ohio

10. Plaintiff was employed as a firefighter by the City of Cleveland until such time as he was constructively discharged.

11. Plaintiff is a Black/African American male and was at all relevant times qualified for his position as a firefighter.

12. Defendant, The City of Cleveland ("Defendant City"), is a municipal corporation, incorporated in the State of Ohio.

13. Defendant Angelo Calvillo was at all relevant times the Chief of the Cleveland Fire Department and responsible for promulgating and implementing policies and practices, particularly the ones complained of herein.

14. Defendant Calvillo created and implemented the unlawful policies described herein, including the grooming policy, the refusal to consider any accommodation, provide an accommodation, and/or to provide a suitable accommodation that did not result in the demotion of Plaintiff and his removal from the firehouse and/or being placed on light duty and then being terminated due to his protected statuses.

15. Defendant City is responsible for the Cleveland Fire Department ("CFD"), an agency it maintains, operates, and governs.

16. John and Jane Does are individuals who were at all relevant times working for and on behalf of the Defendant City and perpetrated, enabled, and/or participated in the unlawful conduct complained of herein but whose names are not yet known despite Plaintiff's diligence. The names of these individuals are not known at this time but are known to Defendant City. Plaintiff will amend his Complaint when their names are discovered.

17. At all relevant times, Defendant City acted through its agency, CFD, to commit the acts alleged in this Complaint and were responsible for such acts.

18. All individual Defendants are sued in their official and individual capacities.

19. Defendants assisted and/or conspired to and/or acted in concert with and/or did engage in the violations of Plaintiff's Federal and State rights. During all times mentioned herein, the Defendants acted under the color of law to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the Defendant City.

## **FACTS**

20. Plaintiff is a Black/African American male firefighter who cannot shave with a razor because he suffers from Pseudofolliculitis Barbae Traumatica (PFB), a medical condition that affects approximately 45-85% of Black/African American men.

21. PFB is a medical condition that causes Plaintiff significant pain, severe bumps, discoloration, boils, disfigurement, scarring, and deformities on his skin such that he cannot shave.

22. PFB does not affect white men and nor does it affect women.

23. PFB is a physiological disorder of the skin. It results in disfigurement of the Plaintiff if he

shaves, including resulting in scarring, permanent bumps, bruises, boils/puss-filled abscess, pain, and deformity of the face.

24.    PFB substantially limits Plaintiff's ability to care for himself in various ways, including shaving.

25.    Furthermore, the skin is the largest organ of the human body, and thus Plaintiff's PFB disability affects his largest organ.

26.    PFB requires Plaintiff to receive medical treatment.

27.    Defendants imposed a grooming policy that required each firefighter to be clean-shaven with a razor in order to be considered "full duty" and to perform the job of firefighter.

28.    Plaintiff's supervisors, including Defendant Calvillo, demanded that Plaintiff shave with a razor to ensure a clean shave with absolutely no hair is visible on the face, no matter how short.

29.    Defendants directed Plaintiff to shave with a razor and then designated him as being in violation of the grooming policy as a result of having PFB.

30.    Defendants initially provided Plaintiff with accommodations for his PFB but later revoked the accommodation.

31.    There were no issues with the accommodation. The Defendants did not suffer any hardship by permitting Plaintiff and others to maintain the reasonable accommodation of slight facial hair.

32.    As a Black/African American man with PFB, Plaintiff cannot shave with a razor as the policy requires.

33.    Instead, Plaintiff can keep his facial hair such that it is closely cropped to the face, usually with 1milimeter of facial hair as he has done throughout his career without any issues or

problems performing his job as a firefighter.

34. PFB affects primarily African American men and precludes them from shaving with a razor.

35. Plaintiff sought an accommodation due to his medical condition of PFB.

36. Plaintiff submitted documentation from his doctors that documented his disability of PFB.

37. In light of his disability, which Defendants recognized, Plaintiff was afforded a medical accommodation to the grooming policy and was permitted to maintain very short facial hair.

38. Plaintiff trimmed his facial hair to the point where it was between 1 mm and ¼ inch long.

39. With the accommodation, Plaintiff was able to perform all of his job functions without any hardship to the Defendants.

40. Plaintiff also passed what is called the "fit test."

41. The "fit test" refers to a test the CFD administers to gage the fit of oxygen masks on the face of a firefighter.

42. If the mask fits properly, then oxygen would not escape from the mask and the taker would pass the fit test.

43. Plaintiff took and passed fit tests on numerous occasions while having short facial during the time he was provided an accommodation.

44. By the CFD's own standards, Plaintiff was found to have performed his job functions while having close cropped facial hair.

45. Plaintiff aptly performed his job functions with the accommodation provided regarding the clean shave policy.

6

46.     Each day Plaintiff worked, he was subject to visual inspections by his supervisors, who observed that the barely noticeable facial hair worn by Plaintiff conformed to the accommodation granted to him.

47.     There were no problems with Plaintiff's accommodation, and it posed absolutely no hardship or life safety issues.

48.     Without reason or cause, on or about April 1, 2020, Defendants revoked Plaintiff's accommodation.

49.     The primary recipients of the medical accommodations are Black/African American males. No white firefighters sought an accommodation to the grooming policy based on PFB.

50.     Defendants revoked Plaintiff's accommodations, and would not consider any alternative accommodations, stated that there would no longer be any accommodations, and that Plaintiff was expected to shave with a razor to be compliant with the CFD's policy.

51.     Defendants declared that there would be no exception to the clean shave policy for any reason.

52.     Plaintiff was subsequently designated as unfit for duty, relegated to light duty, and taken out of his firehouse because of his inability to shave with a razor.

53.     As a result of Defendants' actions, Plaintiff suffered adverse employment actions.

54.     Plaintiff was ultimately forced by Defendants to retire.

55.     Defendants constructively discharged Plaintiff and forced him to retire after refusing to provide Plaintiff with an accommodation.

56.     Plaintiff could not be a firefighter, a position he held for nearly twenty years before his constructive discharge, and was not able to earn the salary and benefits of a firefighter.

57.    Prior to Plaintiff's constructive discharge, Plaintiff was removed from the firehouse and relegated to administrative duties.

58.    Plaintiff was not permitted to respond to any fires or emergencies as he did prior to the revocation of Plaintiff's accommodation.

59.    Plaintiff was forced to go out on administrative leave, and ultimately, to retire.

60.    Plaintiff was also no longer eligible for overtime, promotions, increased retirement, details, or opportunities to work in other commands.

61.    Plaintiff could not earn any compensation while placed on administrative leave.

62.    Defendants did not have legitimate, non-discriminatory reasons for the adverse employment actions.

63.    Defendants took these actions as a result of Plaintiff's disability and protected statuses.

64.    After providing Plaintiff an accommodation due to his PFB for years, Defendants revoked the accommodation.

65.    Upon information and belief, Defendants granted police officers and others an accommodations to not shave.

66.    Upon information and belief, Defendants permitted police officers to maintain facial hair as an accommodation for PFB.

67.    Plaintiff was forced to choose between having a job and earning a living, and shaving, which resulted in significant pain, skin irritation, scarring, deformities, and lasting damage to his skin.

68.    Even though Plaintiff performed his job function with the accommodation without any hardship to Defendants, Defendants without any notice, legitimate reason, or rational basis, unilaterally canceled the accommodation.

69.     Defendants also unlawfully refused to further consider any request for an accommodation and refused to provide a reasonable accommodation to Plaintiff.

70.     Defendants then immediately reassigned Plaintiff from full duty to administrative duty, a significant change in title which relegated Plaintiff to administrative positions.

71.     Moreover, Plaintiff lost pay, wages, and benefits.

72.     Plaintiff was constructively discharged and told he could not work with his PFB.

73.     Additionally, Plaintiff received discipline for maintaining minimal facial hair due to his disability.

74.     Plaintiff was denied and lost overtime pay as a result of being reassigned to administrative duty.

75.     By placing Plaintiff on administrative duty, Defendants placed Plaintiff on the termination track whereby, because of his disability, he was deemed unable to perform his job and terminated.

76.     Furthermore, Defendants' policy disproportionality affects Black/African American firefighters, as PFB affects a significant portion of Black and African American men.

77.     Defendants' actions appear to be aimed at discriminating against African American firefighters as their policy affected only Black/African American firefighters within the CFD.

78.     Defendants' grooming policy does not affect Caucasian firefighters nor female firefighters.

79.     The Defendants' conduct has a disparate impact upon African American firefighters as nearly every African American firefighter was targeted by this sudden and unlawful change in policy.

80.     The result of Defendants' actions is that a disproportionate number of black firefighters

would be adversely affected by the policy, reassigned, and forced to choose between their health and serving as a firefighter.

81.    Moreover, the Defendants' decision to place firefighters with PFB on light duty enables the Defendants to eventually terminate the African American firefighters, further thinning an already sparse representation of Black/African American men at the CFD.

82.    Plaintiff and other Black/African American firefighters were required to shave with a razor and endure painful bumps on their skin, irritated skin conditions, and scarring on their skin as a result of the CFD's unlawful policies.

83.    Defendants refused to provide Plaintiff with any accommodation.

84.    Indeed, rather than forcing Plaintiff to retire, Defendants could have accommodated him by keeping his employment in any number of positions that did not require him to be clean shaven.

85.    Defendants' reason for the clean shave police is ostensibly because of a seal of the facemask, but the Defendants have plenty of positions that do not require the wearing of a facemask.

86.    As such, even though the Defendants had no right to remove Plaintiff from firefighting duties, they could have nonetheless accommodated him by offering numerous other available positions in lieu of terminating him.

87.    Not only were Defendants actions of refusing to grant an accommodation to maintain slight facial hair unlawful, but they doubled down on their unlawful conduct by essentially terminating Plaintiff because of his disability and protected statuses.

88.    At a minimum, the Defendants should not have terminated Plaintiff because of his disability and other protected statuses.

89.     Plaintiff hereby asserts his claims for Defendants' actions of failing to provide an accommodation that kept him as an active-duty firefighter and for then failing to accommodate him by removing him from full duty and subsequently terminating him.

**COUNT I-DISCRIMINATION UNDER TITLE VII AND OHIO LAW**

90.     Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

91.     Plaintiff belongs to a protected class because he is Black/African American.

92.     Plaintiff was qualified for his position and proved so, as he passed multiple fit tests.

93.     Plaintiff suffered many adverse employment actions by Defendants.

94.     Defendants' conduct discriminated against Plaintiff on account of his race, color, national origin, and gender, as only Black/African American male firefighters are affected by the grooming policy.

95.     Defendants engaged in unlawful employment practices prohibited by Title VII and R.C. § 4112.02 by discriminating against Plaintiff as set forth herein, as Defendants' grooming policy targeted Black/African American male firefighters such that they would be culled from the ranks of active firefighters and firehouses and ultimately dismissed.

96.     Defendants also failed to provide an accommodation to Plaintiff that would have allowed him to remain an active duty firefighter, and then violated his rights again when they refused to provide Plaintiff duties that do not require a facemask.

97.     Defendants also discriminated against Plaintiff by terminating him because of his disability and protected statuses.

98.     Defendant Calvillo aided and abetted Defendant City's discrimination by promulgating and enforcing discriminatory policies and practices and denying Plaintiff reasonable accommodations in violation of R.C. § 4112.02(J).

11

99. Defendants' employment practices have the affect of disproportionately targeting Black/African American firefighters so that they would be reassigned and eventually terminated.

100. Only Black/African American male firefighters are adversely affected by the Defendants' polices as the majority of them cannot comply with the Defendants' grooming policies.

101. Defendants knew this because only Black/African American male firefighters sought accommodations, voiced concerns about their ability to comply with the policy, and expressed to Defendants that the grooming policy affects them.

102. Thus, Plaintiff was discriminated against because of his disability, race, ethnicity and national origin.

103. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and physical damages, lost wages, lost benefits, lost retirement, humiliation, loss of reputation, loss of employment, and other damages.

## COUNT II-DISABILITY DISCRIMINATION-ADA AND OHIO LAW

104. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

105. Defendants were Plaintiff's employers and are subject to the ADA.

106. Plaintiff is disabled within the meaning of the ADA and was also known to be disabled by his employers as he was granted an accommodation for PFB on prior occasions.

107. Plaintiff has a bona fide disability that substantially limited major life functions, namely, PFB.

108. PFB is a skin condition that results in deformity, scarring, and inability to shave.

109. Indeed, Defendants concluded that Plaintiff did have a disability that required an accommodation when they provided Plaintiff an accommodation for PFB.

110. Plaintiff was otherwise qualified and did perform the essential functions of the job with the reasonable accommodation.

111. Defendants have conceded same by hiring Plaintiff as a firefighter, maintaining that position for nearly twenty years, and subsequently providing him a medical accommodation.

112. Plaintiff suffered adverse employment action because of his medical condition of PFB.

113. Plaintiff has been discriminated against by the Defendants due to his bona fide disability in violation of Federal and State Law.

114. Defendants failed to provide an accommodation to Plaintiff which would have allowed him to remain an active duty firefighter, and then violated his rights again when they refused to provide a job that does not require a facemask.

115. Defendants also discriminated against Plaintiff by terminating him because of his disability and protected statuses.

116. Moreover, Defendants regarded Plaintiff as having a disability when Defendants unilaterally reassigned Plaintiff from the firehouse to light/administrative duty based upon his disability.

117. Defendants regarded Plaintiff as disabled when they removed him from the firehouse, placed him on light duty, which came with a termination track (where he ultimately was constructively terminated), precluded him from earning overtime, and relegating him to administrative duties that are vastly different from their duties as an active-duty firefighter.

118. Indeed, as an active full duty firefighter, Plaintiff was stationed at a firehouse, responded to fires and emergency calls, earned overtime pay, and was eligible for promotional opportunities.

119. Upon being placed on light/administrative duty, Plaintiff was relegated to everyday work schedules in which he conducted administrative duties outside of a firehouse and could not respond to emergencies and calls for service.

120. Rather than maintain this status, Defendants proceeded with terminating Plaintiff.

121. Moreover, while on light duty, Plaintiff lost wages, including 401k and other compensation benefits, and was prevented from seeking details to work in other parts of the commands that require full duty status.

122. The placement of a firefighter on administrative duty is a demotion.

123. Plaintiff was also subsequently constructively discharged.

124. Moreover, Plaintiff received a charge of discipline for having facial hair.

125. These derogatory letters of reprimand are placed in Plaintiff's personnel file permanently, and adversely affected Plaintiff's promotional opportunities in the CFD.

126. Defendants violated Plaintiff's rights by discriminating against Plaintiff due to his medical condition and disability.

127. Additionally, Defendants also violated Federal and State law by refusing to provide a reasonable accommodation.

128. Defendants also violated Federal and State laws by refusing to consider a request for an accommodation even assuming Plaintiff could not wear a facemask with minimal facial hair.

129. Defendant Calvillo aided and abetted Defendant City's discrimination by promulgating and enforcing discriminatory policies and practices and denying Plaintiff reasonable accommodations in violation of R.C. § 4112.02(J).

14

130. Defendants are required by law to accept, meaningfully review, and provide an accommodation where required by law.

131. Defendants' arbitrary policy of having no exceptions and/or accommodations to its grooming policy violates Federal and State law.

132. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and physical damages, lost wages, lost benefits, lost retirement, humiliation, loss of reputation, loss of employment, and other damages.

## COUNT III-VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. §1983

133. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

134. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

135. In committing the acts of discrimination and retaliation complained of herein, the Defendants acted jointly and under color of state law to deprive Plaintiff of his clearly established constitutionally protected rights under the Fourteenth Amendment of the United States Constitution for Equal Protection.

136. Defendant Calvillo is the highest decision maker for CFD, sets all its policies, and created and instituted the unlawful policies complained of herein.

137. Indeed, Defendants directly targeted Plaintiff because of his race and disability by establishing a policy that they knew would disproportionally affect African American/Black men such that the Defendants targeted Plaintiff as a result of his race, disability, and national origin.

15

138.  Plaintiff is a citizen of the United States, and Defendant Calvillo and John and Jane Does 1-10, are persons under the purposes of Section 1983.

139.  Defendants violated the above statute and associated Constitutional Rights through multiple acts of unlawful discrimination by engaging in the disparate treatment of Black/African American men.

140.  Defendants knew that their grooming policy was a form of intentional discrimination against Black/African American men because they knew that it would only affect Black/African American men, and that when these individuals could not comply with this targeted policy, they would be removed, terminated, and demoted.

141.  As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and physical damages, lost wages, lost benefits, lost retirement, humiliation, loss of reputation, loss of employment and other damages.

## COUNT IV-*Monell* Claim – 42 U.S.C. § 1983

142.  Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

143.  All of the acts and omissions described above, with regard to the unreasonable, unlawful, and retaliatory discrimination against Plaintiff, were carried out pursuant to policies and practices of the Defendants, which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation of and under the supervisory authority of Defendant City and its agency, the CFD.

144.  Defendant City and the CFD, by their policy – through its agents, servants and employees, authorized, sanctioned and/or ratified the individual wrongful acts of Defendants and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

145. The actions of Defendants resulted from and were taken pursuant to the *de facto* policies and/or well-settled and widespread customs and practices of Defendant, which are implemented by members of the CFD.

146. The relevant policies, customs and practices with regard to racial and disability discrimination perpetrated against Plaintiff are pursuant to an explicit grooming policy. In addition, there was no exception or accommodation in relation to these unlawful policies.

147. Plaintiff's injuries were a direct and proximate result of the Defendant City and its agency, the CFD's, wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of Defendant City and the CFD to properly supervise, monitor, and train firefighters with regard to unconstitutional discrimination and retaliatory conduct.

148. Defendant City knew or should have known that the acts alleged herein would deprive Plaintiff of his rights in violation of the Fourteenth Amendment to the United States Constitution.

149. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and physical damages, lost wages, lost benefits, lost retirement, humiliation, loss of reputation, loss of employment, and other damages.

## COUNT V-DISPARATE TREATMENT -TITLE VII, ADA, AND OHIO LAW

150. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

151. Defendants' policies were the result of intentional discrimination against Plaintiff because he is Black/African American.

152. Defendants knew that their conduct would impact a significant portion of the Black/African American male firefighters.

153. Defendants' policies were also the result of intentional discrimination based upon the disability of the Plaintiff.

154. Indeed, Defendants knew that the significant number of individuals who sought accommodations to the policy due to PFB were Black/African American male firefighters.

155. Defendants were also aware that by revoking the accommodations, they would be targeting Black/African American firefighters, and those firefighters would be removed from the firehouses and placed on light duty for eventual termination.

156. Defendants knew that by enacting this policy and by not providing accommodations, they would be directly targeting Plaintiff and others similarly situated persons who they knew not only had a disability, but were already accommodated by the Defendants at the time the policy was enacted.

157. Defendants clearly had discriminatory intent in enacting the grooming policy and enacting the rule that no accommodations would be provided or even considered.

158. Defendant Calvillo aided and abetted Defendant City's discrimination by promulgating and enforcing discriminatory policies and practices and denying Plaintiff reasonable accommodations in violation of R.C. § 4112.02(J).

159. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and physical damages, lost wages, lost benefits, lost retirement, humiliation, loss of reputation, loss of employment, and other damages.

## COUNT VI-DISPARATE IMPACT DISCRIMINATION-TITLE VII, ADA, OHIO LAW

160. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

161. Defendants' grooming policy seems neutral, but in fact has a significant disparate impact upon Black/African American men and those suffering from PFB.

162. Plaintiff was subjected to adverse employment actions including but not limited to removal from the ranks of active-duty firefighters, demotions by being placed on administrative duty with a termination track, inability to earn overtime, and inability to take on details to other firehouses and commands, thereby losing pay and benefits.

163. Defendants' policy effectively discriminates against Black/African American men.

164. The Defendants' mandatory shave policy with no accommodation other than termination has a disparate impact on Black/African American males. Defendants' policy does not affect white males or women.

165. Moreover, Caucasian men and women are not afflicted with PFB.

166. Further, 45%-80% of Black/African American men are affected by Defendants' policies, which means that 45%-80% of Back/African American men are ineligible to be active-duty firefighters. Indeed, a significant amount of Black/African American firefighters at the CFD are adversely affected by this policy.

167. Defendants' shaving policy, while appearing neutral on its face, in application is discriminatory, as a high percentage of African American men cannot comply with the policy.

168. Moreover, Defendants' seemingly neutral policies have a disparate impact on persons suffering from PFB, such as the Plaintiff and several others at the CFD who suffer from PFB.

169. There are many active-duty firefighters who suffer from PFB. Defendants' policy has an impact upon them because while it seems facially neutral, it disproportionally affects person with PFB, such as the Plaintiff.

170.   As such, Defendants' grooming policy disparately impacts Black/African American men and individuals diagnosed with PFB who cannot shave.

171.   Defendant Calvillo aided and abetted Defendant City's discrimination by promulgating and enforcing discriminatory policies and practices and denying Plaintiff reasonable accommodations in violation of R.C. § 4112.02(J).

172.   As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and physical damages, lost wages, lost benefits, lost retirement, humiliation, loss of reputation, loss of employment, and other damages.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a)  A declaration that Defendants violated Plaintiff's federal and state civil rights;

(b)  Removal of all command disciplines and the like from the Plaintiff's employment files;

(c)  a declaration that the shaving policy and the policy of not having any exceptions to it is unlawful;

(d)  an injunction prohibiting further discrimination and the violation of rights described herein;

(e)  Compensatory, consequential, and special damages;

(f)  Punitive damages against the individual Defendants;

(g)  Damages for emotional distress, lost wages, back pay, front pay, benefits, retirement, statutory damages, medical expenses, interest, costs of suit;

(h)  Reasonable attorneys' fees and costs;

(i)  Appointment of a receiver/monitor to ensure Defendants' compliance with the laws and to ensure that the offending policies are changed, inhibited, and forbidden; and

(j)  Such other and further relief as appears just and proper.

Respectfully submitted,

/s/Ziad Tayeh _____          /s/ Aymen A. Aboushi _____
Ziad Tayeh                              Aymen A. Aboushi
Tayeh Law Offices, LLC                  The Aboushi Law Firm
22255 Center Ridge Road, Suite 311      1441 Broadway, Fifth Floor
Rocky River, OH 44116                   New York, N.Y. 10018
Tel: 440-580-0365                       Tel: 212.391.8500
Fax: 440-359-8755                       Fax: 212.391.8508
Email: ziadtayeh@tayehlaw.com           Email: aymen@aboushi.com
Attorneys for Plaintiff                 Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

Respectfully submitted,

/s/Ziad Tayeh _____          /s/ Aymen A. Aboushi _____
Ziad Tayeh                              Aymen A. Aboushi
Tayeh Law Offices, LLC                  The Aboushi Law Firm
22255 Center Ridge Road, Suite 311      1441 Broadway, Fifth Floor
Rocky River, OH 44116                   New York, N.Y. 10018
Tel: 440-580-0365                       Tel: 212.391.8500
Fax: 440-359-8755                       Fax: 212.391.8508
Email: ziadtayeh@tayehlaw.com           Email: aymen@aboushi.com
Attorneys for Plaintiff                 Attorneys for Plaintiff