## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ANTHONY DAVIS,                                        CASE NO.: 1:23-CV-00536

           Plaintiff,                          JUDGE: SOLOMON OLIVER JR.

v.                                                   **PLAINTIFF ANTHONY DAVIS'**
                                                     **BRIEF IN OPPOSITION TO**
CITY OF CLEVELAND, et al.,                           **DEFENDANTS' MOTION FOR**
                                                     **JUDGMENT ON THE**
           Defendants.                         **PLEADINGS**

Now comes Plaintiff Anthony Davis, by and through undersigned counsel, and hereby requests that this Honorable Court deny Defendants City of Cleveland and Angelo Calvillo's Motion for Judgment on the Pleadings. A Memorandum in Opposition of Defendants' Motion is attached hereto and incorporated herein.

Respectfully Submitted,

/s/Ziad Tayeh                          /s/ Aymen A. Aboushi
Ziad Tayeh                             Aymen A. Aboushi
Tayeh Law Offices, LLC                 The Aboushi Law Firm
22255 Center Ridge Road, Suite 311     1441 Broadway, Fifth Floor
Rocky River, OH 44116                  New York, N.Y. 10018
Tel: 440-580-0365                      Tel: 212.391.8500
Fax: 440-359-8755                      Fax: 212.391.8508
Email: ziadtayeh@tayehlaw.com          Email: aymen@aboushi.com
Attorney for Plaintiff                 Attorney for Plaintiff

## MEMORANDUM IN OPPOSITION

### I.      FACTS[1]

Plaintiff Anthony Davis ("Plaintiff") is a resident of Cleveland, Ohio. Compl. at ¶ 9. Plaintiff was employed as a firefighter by the City of Cleveland until such time as he was constructively discharged. Compl. at ¶ 10. Plaintiff is a Black/African American male and was at all relevant times qualified for his position as a firefighter. Compl. at ¶ 11.  Defendant The City of Cleveland ("Defendant City") is a municipal corporation, incorporated in the State of Ohio. Compl. at ¶ 12. Defendant Angelo Calvillo ("Defendant Calvillo") was at all relevant times the Chief of the Cleveland Fire Department and responsible for promulgating and implementing policies and practices, particularly the ones complained of in Plaintiff's Complaint. Compl. at ¶ 13.

Plaintiff is a Black/African American male firefighter who cannot shave with a razor because he suffers from Pseudofolliculitis Barbae Traumatica (PFB), a medical condition that affects approximately 45-85% of Black/African American men. Compl. at ¶ 20. PFB is a medical condition that causes Plaintiff significant pain, severe bumps, discoloration, boils, disfigurement, scarring, and deformities on his skin such that he cannot shave. Compl. at ¶ 21. PFB does not affect white men, nor does it affect women. Compl. at ¶ 22. PFB is a physiological disorder of the skin. It results in disfigurement of the Plaintiff if he shaves, including resulting in scarring, permanent bumps, bruises, boils/puss-filled abscess, pain, and deformity of the face. Compl. at ¶ 23. PFB substantially limits Plaintiff's ability to care for himself in various ways, including shaving. Compl. at ¶ 24. Furthermore, the skin is the largest organ of the human body, and thus Plaintiff's PFB disability affects his largest organ. Compl. at ¶ 25. PFB requires Plaintiff to receive medical treatment. Compl. at ¶ 26.

---

[1] Facts are taken directly from the Complaint. For the purposes of a motion for judgment on the pleadings, where, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless <u>clearly</u> entitled to judgment. *Jackson v Professional Radiology Inc.*, 864 F3d 463 (6th Cir 2017)(emphasis added).

Defendants imposed a grooming policy that required each firefighter to be clean-shaven with a razor in order to be considered "full duty" and to perform the job of firefighter. Compl. at ¶ 27. Plaintiff's supervisors, including Defendant Calvillo, demanded that Plaintiff shave with a razor to ensure a clean shave with absolutely no hair is visible on the face, no matter how short. Compl. at ¶ 28. Defendants directed Plaintiff to shave with a razor and then designated him as being in violation of the grooming policy as a result of having PFB. Compl. at ¶ 29.

Plaintiff sought accommodation due to his medical condition of PFB. Compl. at ¶ 35. Plaintiff submitted documentation from his doctors that documented his disability of PFB. Compl. at ¶ 36. In light of his disability, which Defendants recognized, Plaintiff was afforded medical accommodation to the grooming policy and was permitted to maintain very short facial hair. Compl. at ¶ 37. Plaintiff trimmed his facial hair to the point where it was between 1 mm and ¼ inch long. Compl. at ¶ 38. With the accommodation, Plaintiff was able to perform all of his job functions without any hardship to the Defendants. Compl. at ¶ 39. Each day Plaintiff worked, he was subject to visual inspections by his supervisors, who observed that the barely noticeable facial hair worn by Plaintiff conformed to the accommodation granted to him. Compl. at ¶ 46. There were no problems with Plaintiff's accommodation, and it posed absolutely no hardship or life safety issues. Compl. at ¶ 47.

While Plaintiff received accommodations, he experienced no issues with the accommodation, nor did Plaintiff suffer any adverse health or other risks relating to the short stubble he maintained. Compl. at ¶ 30, 31, 37, 39, 40, 43, 44 and 47. The Defendants did not suffer any hardship by permitting Plaintiff and others to maintain the reasonable accommodation of slight facial hair. Compl. at ¶ 31.

Without reason or cause, on or about April 1, 2020, Defendants revoked Plaintiff's accommodation. Compl. at ¶ 48. Defendants refused to consider any alternative accommodations, stated that there would no longer be any accommodations, and that Plaintiff was expected to shave with a razor to be compliant with the CFD's policy. Compl. at ¶ 50. Defendants declared that there

would be no exception to the clean shave policy for any reason. Compl. at ¶ 51. Plaintiff was subsequently designated as unfit for duty, relegated to light duty, and taken out of his firehouse because of his inability to shave with a razor. Compl. at ¶ 52.

As a result of Defendants' actions, Plaintiff was ultimately forced by Defendants to retire. Compl. at ¶ 53 and 54. Defendants constructively discharged Plaintiff and forced him to retire after refusing to provide Plaintiff with accommodation. Compl. at ¶ 55.

Defendant Calvillo created and implemented the unlawful policies described herein, including the grooming policy, the refusal to consider any accommodation, provide an accommodation, and/or to provide a suitable accommodation that did not result in the demotion of Plaintiff and his removal from the firehouse and/or being placed on light duty and then being terminated due to his protected statuses. Compl. at ¶ 14. Defendant City is responsible for the Cleveland Fire Department ("CFD"), an agency it maintains, operates, and governs. Compl. at ¶ 15.

Plaintiff sued the Defendants for Count I - Discrimination under Title VI and Ohio Law, Count II - Disability Discrimination - ADA and Ohio Law, Count III - Violation of Constitutional Rights under 42 U.S.C. § 1983, Count IV - *Monell* Claim - 42 U.S.C. § 1983, Count V - Disparate Treatment – Title VII, ADA, and Ohio Law, and Count VI - Disparate Impact Discrimination – Title VII, ADA, Ohio Law.

Defendants filed a Motion for Judgment on the Pleadings alleging: 1) Public Employment Risk Reduction Program ("PERRP") and Occupational Safety and Health Administration ("OSHA") allegedly require clean-shaven firefighters (Count II); 2) Plaintiff is allegedly not "disabled" (Count II); 3) OSHA allegedly required Plaintiff to be clean-shaven (Count II - ADA claim and Counts I, V, VI - Title VII claim); 4) state and federal law allegedly required Plaintiff to shave (Count III); 5) OSHA allegedly required Plaintiff to shave (Count IV - *Monell* claim); and (6) Plaintiff's state-law claims allegedly fail.

Plaintiff now responds to Defendants' Motion for Judgment on the Pleadings. For the reasons set forth below, Defendants' Motion is without merit and should be denied.

## II.    LAW AND ARGUMENT

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) "A motion for judgment on the pleadings is granted when there is no material issue of fact and the party making the motion may be entitled to judgment as a matter of law." *Id.*

A Rule 12(c) motion for judgment on the pleadings is considered pursuant to the same standard of review as a Rule 12(b)(6) motion for dismissal. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir.2008). A claim survives a motion to dismiss if the complaint states sufficient factual matter, if accepted as true, states a claim to relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is not akin to a "probability requirement." *Id.*

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The Court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir.2002).

Defendants' Motion hinges on two arguments: 1) Plaintiff is allegedly not disabled; and 2) the applicability of OSHA regulations allegedly precludes Plaintiff's claims. Because both arguments lack merit, and Plaintiff has sufficiently pled his claims, this Honorable Court must deny Defendants' Motion for Summary Judgment.

### A. Plaintiff's PFB is a Disability under the ADA.

Defendants first argue that Plaintiff's PFB is not a "disability." Prior to the enactment of the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12101-03 (2008), courts narrowly interpreted the definition of "disability" in a manner that generally disfavored disability claims based on PFB. See e.g. *Kennedy v. Gray*, 83 F. Supp. 3d 385, 390 (D.D.C. 2015). However, the ADAAA subsequently instructed courts to construe the "definition of 'disability' . . . in favor of broad coverage." 42 U.S.C. § 12102(4)(A). With this change in law, Courts either outright held that PFB was a disability or otherwise allowed the question of whether PFB is a disability to proceed to a jury. See *Bey v. City of New York*, E.D.N.Y. No. 18-CV-4655, 2020 U.S. Dist. LEXIS 15958, at *13 (Jan. 30, 2020) ("A reasonable trier of fact could only find that PFB is a disability under subsection A of the definitional section of the ADA."); see also *Lewis v. Univ. of Pa.*, 779 Fed. Appx. 920, 925 (3rd Cir. 2019) ("Here, whether PFB qualified as a disability under the ADA definition was a fact in dispute, the District Court was therefore correct to submit the question to the jury."); *Dehonney v. G4S Secure Sols.*, 2017 U.S. Dist. LEXIS 162217, at *6 (W.D. Pa. Sept. 28, 2017) ("[I]t is plausible that Plaintiff's pseudofolliculitis barbae condition is a disability.").

The Complaint aptly makes clear that Plaintiff's medical condition is a bona fide disability. As our Supreme Court noted, "the term 'disability' is defined in the ADA to include: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Bragdon v Abbott*, 524 US 624, 657 (1998); citing 42 U.S.C. § 12102(2). 4

The Complaint makes clear that PFB fits neatly into that definition. Indeed, the Complaint makes clear that PFB affects the largest organ, Plaintiff's skin, affects a major life function of Plaintiff, including his ability to care for himself and shave, as well as causing significant pain, irritation, scaring and deformities. PFB's affects on Plaintiff fits neatly within the definition of a major life activity. *See* 45 CFR 84.3 ("Major life activities means functions such as caring for one's

self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.")

Furthermore, the Complaint also makes clear that the Defendants regarded Plaintiff as disabled by providing him an accommodation for his disability, removing him from the firehouse, placing him on light duty, and assigning him administrative duties because of his disability. Defendants would not have removed Plaintiff from firefighting duties nor place him on light duty if Defendants did not regard him as disabled and unable to perform his job functions because of his PFB.  Thus, Defendants' claim that Plaintiff does not have a disability fails as matter of law.

Unsurprisingly, Defendants cite no case law substantiating their position that PFB is not a "disability." Rather, Defendants claim that because "disability" is defined as a "physical or mental impairment" that "substantially limits" one or more "major life activities," and "working" is a major life activity, Plaintiff is not disabled. Defendants' argument is fallacious, as "working" is not the only major life activity that may be considered in determining whether a person is, in fact, disabled. "In fact, in holding that PFB is in fact a "disability, Courts have held that "major life activities" includes self-care, such as grooming. *Bey,* 2020 U.S. Dist. LEXIS, at *13. As such, Defendants' argument that Plaintiff is not "disabled" within the meaning of the ADA is meritless. Therefore, this Honorable Court should deny Defendants' Motion for Judgment on the Pleadings.

**B.  The OSHA Regulations Cited by Defendants Do Not Bar Plaintiff's Claims.**

The balance of Defendants' Motion focuses on OSHA regulations and their alleged obligations to comply with same. Defendants allege that, in 2017, Defendants adopted OSHA's clean-shaven standards. However, Defendants fail to state why Defendants granted Plaintiff an accommodation and allowed Plaintiff to serve as a firefighter (without incident) for several years, from 2017 – March 2020.

Defendants cite to 29 C.F.R. § 1910.134(g)(1)(i) to support their position. However, in interpreting the regulation, OSHA commented:

> "The Respiratory Protection standard, paragraph 29 CFR 1910.134(g)(1)(i)(A), states that respirators shall not be worn when facial hair comes between the sealing surface of the facepiece and the face or that interferes with valve function. **Facial hair is allowed as long as it does not protrude under the respirator seal, or extend far enough to interfere with the device's valve function. Short mustaches, sideburns, and small goatees that are neatly trimmed so that no hair compromises the seal of the respirator usually do not present a hazard and, therefore, do not violate paragraph 1910.134(g)(1)(i)**."

See OSHA Interpretive Letter Dated May 9, 2016, attached hereto as Ex. 1.[2] (Emphasis added).

Noteworthy is that OSHA issued said Interpretive Letter more than five years following the letter cited by Defendants in their motion. As such, OSHA's position is in line with both Plaintiff's request for an accommodation as well as Defendants' prior accommodation of Plaintiff.

Defendants further cite to the comments to 29 C.F.R. § 1910.134(f), which states that fit tests shall not be administered when facial hair is present. As an initial matter, this provision should be read in conjunction with the Interpretive Letter cited above. Moreover, Defendants' position fails to consider that Defendants did, in fact, administer the fit test to Plaintiff, and Plaintiff consistently passed the fit test.

Notably, none of the arguments asserted by the Defendants stand for the proposition that any individual using a SCBA must be "clean shaven." Indeed, nowhere in any OSHA regulation do the words "clean shave" appear, and OSHA does not require anyone using a SCBA to be "clean shaven." Defendants improperly ask this Court, within the context of a motion for judgment on the pleadings, to make an illogical factual and legal leap and falsely equate their manufactured term of "clean shaven" with OSHA's guidance that factual hair shall not "interfere" with the seal.

---

[2] https://www.osha.gov/laws-regs/standardinterpretations/2016-05-09

Defendants' unlawful policies are incongruent with OSHA's guidance. Plaintiff's Complaint makes clear that no facial hair should disrupt the sealing surface and face, and certainly does not interfere with the seal, as Plaintiff passed several fit tests with the slight facial hair he was permitted to have. Indeed, the Complaint is replete with irrefutable facts that Plaintiff passed numerous fit tests while being accommodated, and that the accommodation in no way impeded the function of the SCBA, mask, or any of Plaintiff's firefighting duties. As such, this Honorable Court should deny Defendants' Motion for Judgment on the Pleadings.

### C. There is no Basis for Defendants' Unlawful Mandate that Plaintiff Shave With a Razor.

Defendants, yet again, ignore Plaintiff's Complaint by arguing that only shaving with a razor is acceptable. Nothing in OSHA or any other guiding principle requires Plaintiff to shave with a razor as Defendants have mandated. The fact that a large percentage of Black/African American men cannot physically shave with a razor without suffering significant physical harm makes Defendants' policies even more egregious. Defendants' position essentially disqualifies a large percentage of Black/African American men from being firefighters, even though they are able to pass the very fit tests that are determinative of a firefighter's ability to utilize the appropriate equipment.

As the Complaint makes clear, Plaintiff was able to cut his facial hair with methods other than a razor sufficiently short to pass repeated fit tests. Thus, Plaintiff's use of shaving methods other than a razor complied with OSHA's regulations. Defendants have not established, nor can they establish, that their insistence that firefighters be clean shaven with a razor is mandated by OSHA. Nor can Defendants demonstrate that being razor-shaven is necessary for firefighting duties, that Plaintiff's alternative methods of cutting his facial hair violated OSHA, or that not shaving with a razor places Plaintiff or others at any greater risk than those present for razor-shaved firefighters. As such, this Honorable Court should deny Defendants' Motion on the Pleadings.

**D. Defendants' Motion Must be Denied Because Defendants Fail to Establish That They are Entitled to Judgment as a Matter of Law for Failing to Accommodate Plaintiff by Placing Him in Any Number of Other Available Positions or Duties**.

While Defendants argue in broad strokes that they are entitled to judgment as a matter of law, they fail to present any reason for the Court to grant that judgment on Plaintiff's failure to accommodate claims. Defendants' entire Motion is based on the premise that Defendants could not grant Plaintiff a shaving profile as an accommodation. "Reasonable accommodation includes both reasonable modification of the duties of the existing position, if feasible, and transfer, reassignment, or hire into a vacant position the handicapped employee can perform both physically and by qualification." *Smith v. Dillard Dept. Stores, Inc.*, 139 Ohio App.3d 525, 532, 744 N.E.2d 1198 (8th Dist.2000); citing *Wooten v. Columbus, Div. of Water*, 91 Ohio App. 3d 326, 334, 632 N.E.2d 605 (10th Dist. 1993).

A plain reading of the Complaint establishes that Plaintiff not only sought an accommodation to maintain facial hair, but also that Defendants could have provided an accommodation by assigning Plaintiff to a position that do not require the use of a SCBA. Prior to Plaintiff's forced resignation, Defendants did provide Plaintiff an accommodation by allowing Plaintiff to perform administrative duties at the firehouse in lieu of firefighting duties. Plaintiff should therefore be permitted to pursue his claims because Defendants stripped Plaintiff of all accommodations, including working in a position he was physically able to perform prior to his constructive discharge.

Indeed, the Complaint is replete with facts that require this Court deny Defendants' Motion. For example, the Complaint states that Defendants refused to provide Plaintiff with any accommodation. Compl. at ⁋ 83. The Complaint is equally clear that the Defendants could have provided an accommodation to Plaintiff by permitting him to work in a positions that did not require Plaintiff to wear a SCBA. *Id.* at 84. The public record establishes that the CFD has several divisions that Plaintiff could have been assigned to rather than forcing him to resign. As such,

while Defendants singularly focus on Plaintiff's claims for an accommodation to maintain facial hair as a firefighter, they fail to address Plaintiff's failure to accommodate claims related to placing Plaintiff at other available positions that do not pose a hardship upon Defendants. As such, this Honorable Court should deny Defendants' Motion for Judgment on the Pleadings.

### E. Defendants are Not Entitled to Judgment on the Pleadings Regarding Plaintiff's Equal Protection Claims.

Defendants claim that Plaintiff has failed to state a claim for an Equal Protection Violation because Defendants were allegedly following OSHA regulations. The Fourteenth Amendment right to equal protection of the law is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To establish an Equal Protection violation, plaintiff must show purposeful discrimination directed to an identifiable class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). Even if no suspect class or identifiable right is implicated, an Equal Protection violation may be found based upon "arbitrary and irrational discrimination" or an allegation of selective treatment in terms of public employment where it is shown that such treatment was motivated by an intention to discriminate based upon impermissible considerations, such as race or by a malicious or bad faith intent to injure the person. *Greco v. Cty. of Nassau*, 146 F. Supp. 2d 232, 248 (E.D.N.Y. 2001).

Plaintiff's Complaint clearly alleges that Defendants subjected Plaintiff to intentional racial discrimination based on their grooming policy, which specifically targeted Black/African American males. See Comp. at ¶ 140, 151, 153, 157. It is undisputed that PFB almost exclusively impacts Black/African American males. In fact, a continuation of Defendants' policy would disqualify a great percentage of Black/African American males from becoming firefighters. Moreover, Defendants had provided Plaintiff with accommodations for years before Defendants suddenly revoked them, and further failed to allow Plaintiff the right to remain in a position that did not require him to shave. Finally, the OSHA Interpretive Letter dated May 9, 2016 coupled with the fact Plaintiff always passed his fit tests demonstrate that Plaintiff has stated a viable

Equal Protection Claim. As such, this Court should deny Defendants' Motion for Judgment on the Pleadings.

**F. Defendants are Not Entitled to Judgment on the Pleadings Regarding Plaintiff's *Monell* Claims.**

Defendants next argue that Plaintiff failed to state a *Monell* claim because "there is no underlying constitutional violation." As argued above, Plaintiff has stated facts in his Complaint that establish a viable constitutional claim.

Defendants further argue that Plaintiff failed to allege *each* of the four "pathways" under *Monell*. Defendants misconstrue the law. "To succeed on a *Monell* claim, the plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Briggs v. Hogan*, 6th Cir. No. 21-5581, 2022 U.S. App. LEXIS 8783, at *16-17 (Apr. 1, 2022); citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). "The plaintiff can establish an illegal policy or custom **by showing one of the following**: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id*. (Emphasis added.)

Defendants allege Plaintiff is required to demonstrate each of the four "pathways." However, only one of the four "pathways" must be alleged to establish a claim under *Monell*. Defendants concede that Plaintiff adequately pled one pathway pertaining to Defendants' "clean shaven" policy. Thus, Defendants' argument is without merit.

Moreover, the Complaint is clear that Defendant Calvillo was the Chief of the Cleveland Fire Department and is the highest authority and policy maker. Compl. at ¶ 13. In fact, the Complaint is explicit: "Defendant Angelo Calvillo was at all relevant times the Chief of the Cleveland Fire Department and responsible for promulgating and implementing policies and practices, particularly the ones complained of herein." *Id*. Defendant Chief Calvillo implemented the unlawful polices, and thus, as the Chief, is the highest policy maker in the CFD. There is no

higher position than Chief in the CFD. As such, Plaintiff has established that the Chief of the CFD implemented the unlawful policy complained of.

Regardless, Plaintiff in fact pled that Defendants ratified the illegal actions of Defendants (Compl. at ¶ 144), that Defendants failed to properly supervise and train their employees (Compl. at ¶ 147), and customs of discrimination existed (Compl. at ¶ 145-147). Thus, even if Defendant's recitation of the law was correct, which it is not, Defendants' arguments still lack merit. As such, this Honorable Court should deny Defendants' Motion for Judgment on the Pleadings.

### III. Plaintiff Should be Permitted to Amend His Complaint to Address any Factual or Legal Matters.

This matter is in its infancy. Should the Court decide that any matter or fact in the Complaint need clarification, the Court should grant leave for Plaintiff to file an amended complaint to address same. Under Rule 15(a)(2), the Court should "freely give leave" for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Teft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (citations omitted); *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (internal quotations omitted) (noting that courts interpret the language in Rule 15(a) as conveying "a liberal policy of permitting amendments to ensure the determination of claims on their merits"). Plaintiff should be able to amend his Complaint at this juncture should any issues of law or fact need amplification, clarification, or supplementation.

### IV.    CONCLUSION

For the foregoing reasons, this Honorable Court should deny Defendants' Motion for Judgment on the Pleadings.

Respectfully Submitted,

*/s/Ziad Tayeh*                                      */s/ Aymen A. Aboushi*

Ziad Tayeh                                          Aymen A. Aboushi
Tayeh Law Offices, LLC                              The Aboushi Law Firm
22255 Center Ridge Road, Suite 311                  1441 Broadway, Fifth Floor
Rocky River, OH 44116                               New York, N.Y. 10018
Tel: 440-580-0365                                   Tel: 212.391.8500
Fax: 440-359-8755                                   Fax: 212.391.8508
Email: ziadtayeh@tayehlaw.com                       Email: aymen@aboushi.com
Attorney for Plaintiff                              Attorney for Plaintiff

### CERTIFICATE OF SERVICE

The foregoing was filed with the electronic filing system on 28th of August 2023. Notice of this filing will be delivered through the electronic filing system.

*/s/Ziad Tayeh*
Ziad Tayeh (0088027)
Tayeh Law Offices, LLC
Attorney for Plaintiff