UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DAVIS, ) | Case No.: 1:23 CV 536 |
| ) | |
| Plaintiff ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| v. ) | |
| ) | |
| CITY OF CLEVELAND, *et al.*, ) | |
| ) | |
| Defendants ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendants City of Cleveland ("Cleveland") and Angelo Calvillo's Motion for Judgment on the Pleadings ("Motion") (ECF No. 17). For the reasons that follow, the court grants the Motion.

## I. BACKGROUND

Plaintiff Anthony Davis—a Black man—suffers from a skin condition called pseudofolliculitis barbae, or "PFB" for short. (Compl. ¶ 20, ECF No. 1.) PFB affects Black men only, and it causes Davis "significant pain, severe bumps, discoloration, boils, disfigurement, scarring, and deformities on his skin such that he cannot shave." (*Id.* ¶ 21.) To avoid these symptoms, Davis maintains facial hair. (*Id.* ¶ 33.)

Despite his PFB, Davis worked as a Cleveland firefighter for nearly two decades. (*Id.* ¶ 56.) Yet at some point during his tenure, Cleveland "imposed a grooming policy that required each firefighter to be clean-shaven with a razor." (*Id.* ¶ 27.) Davis's PFB prevented him from complying with this policy, so he sought an accommodation. (*Id.* ¶ 35.) Initially, Cleveland was open to Davis's request and permitted him "to maintain very short facial hair."

(*Id.* ¶ 37.) To Davis, this plan seemed to work: his oxygen mask still fit snugly, and he "was able to perform all of his job functions." (*Id.* ¶¶ 39–43.)

In April 2020, however, Cleveland eliminated all exceptions to its grooming policy—including Davis's accommodation. (*Id.* ¶¶ 48–51.) It did so, it contends, to comply with binding federal regulations. (Answer ¶ 178, ECF No. 12.) So Davis needed to start shaving with a razor to keep his job. (Compl. ¶ 50.) He declined to do so and "was subsequently designated as unfit for duty, relegated to light duty, and taken out of his firehouse." (*Id.* ¶ 52.) A short time later, he retired. (*Id.* ¶ 53.)

Davis then initiated this lawsuit against Cleveland, Cleveland Fire Chief Angelo Calvillo, and several unnamed Cleveland employees. He brought claims for race discrimination under Title VII and Ohio law; disability discrimination under the Americans with Disabilities Act ("ADA") and Ohio law; denial of equal protection under 42 U.S.C. § 1983; and a *Monell* claim for an unconstitutional policy under 42 U.S.C. § 1983. After answering Davis's Complaint, Cleveland and Calvillo moved for judgment on the pleadings (ECF No. 17). Davis filed an opposition brief (ECF No. 18), and Cleveland and Calvillo filed a reply (ECF No. 19).[1] The matter is now ripe for adjudication.

## II. LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The standard for evaluating a motion for judgment on the pleadings mirrors the standard a court applies to a motion to dismiss under

---

[1] For ease of reference, the court will occasionally refer to Cleveland and Calvillo—the movants here—as just "Cleveland."

Federal Rule of Civil Procedure 12(b)(6). *Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 659 (6th Cir. 2021). Under that standard, the court accepts as true all well-pleaded factual allegations, which must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But the court "need not accept legal conclusions." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020).

### III. DISCUSSION

Cleveland argues that it is entitled to judgment on the pleadings for two reasons. First, it argues that Davis's ADA claims fail because Davis has failed to allege a disability under the ADA. Second, it argues that all of Davis's claims fail because binding federal regulations require its grooming policy. The court addresses these arguments in turn.

**A.     Davis has alleged a disability under the ADA.**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). So Davis must suffer from a disability to be entitled to relief under the ADA. Relevant here, the ADA defines "disability" as both (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual," and (2) "being regarded as" disabled. *Id.* § 12102(1). If Davis's PFB fits either definition, Davis has plausibly alleged a disability under the ADA.

The court first addresses the second option: that PFB qualifies as a disability because it caused Davis to be "regarded as" disabled. To be "regarded as" disabled, an employee must face discrimination "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). In this context, "physical impairment" does not include "impairments that are transitory and minor."

*Id.* § 12102(3)(B). But it is "defined broadly, to include 'any physiological disorder or condition affecting one or more body systems.'" *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019) (quoting 29 C.F.R. § 1630.2(h) (ellipsis omitted)).

Given this definition, Davis's PFB easily qualifies as a "physical impairment." After all, Davis claims that it causes him "permanent bumps, bruises, boils/puss-filled abscess[es], pain, and deformity of the face." (Compl. ¶ 23.) These allegations suffice to establish that Davis's PFB is a physiological disorder affecting his skin. Thus, so long as Davis also alleges that he suffered an adverse employment action "because of" his PFB, 42 U.S.C. § 12102(3)(A), he meets the criteria for being "regarded as" disabled—at least at this early stage in the litigation.

On this score, Davis alleges that Cleveland revoked his accommodation, deemed him unfit for duty, and relegated him to light duty, which involved administrative work. (Compl. ¶¶ 50–57.) As a result, Davis was barred from "respond[ing]" to any fires or emergencies" and lost overtime opportunities—forcing him to retire. (Compl. ¶¶ 54, 58–60, 74.) In other words, Davis alleges that he was constructively discharged, which "is recognized as an adverse employment action under the ADA." *Arndt v. Ford Motor Co.*, 716 F. App'x 519, 529 (6th Cir. 2017) (citing *Talley v. Family Dollar Stores of Ohio*, Inc., 542 F.3d 1099, 1107 (6th Cir. 2008)).

Cleveland counters that Davis was not "regarded as" disabled because "his light duty was temporary" and "brief[]," and that he "was requested to return to full firefighting duties" shortly after being placed on light duty. (Reply at PageID #152.) But the paragraphs of Davis's Complaint that Cleveland cites do not support this assertion. To the contrary, Davis offers no details regarding the duration of his light duty; he simply alleges that he was reassigned and told that "he could not work with his PFB," causing him to retire. (Compl. ¶¶ 70–74.) And the court

must accept these allegations as true.

In short, Davis's PFB, as alleged, is a physiological disorder affecting his skin. So it is a physical impairment for purposes of 42 U.S.C. § 12102(3)(A). *See Babb*, 942 F.3d at 319. Additionally, Davis alleges that he suffered an adverse employment action—constructive discharge—because of his PFB. As a result, Davis's PFB qualifies as a "regarded as" disability under the ADA, and the court need not address whether it also qualifies as a disability under any of the ADA's other definitions.

### B. Federal regulations require Cleveland's grooming policy.

#### 1. *The applicable regulations*

Cleveland asserts—and Davis does not contest—that Ohio law requires it to follow Occupational Safety and Health Administration ("OSHA") regulations. *See generally* R.C. § 4167.04; O.A.C. § 4167-3-01.[2] One such regulation, 29 C.F.R. § 1910.134, governs respiratory protection for firefighters. It mandates, among other things, that firefighters wear a device called a self-contained breathing apparatus ("SCBA") when exposed to toxic fumes. 29 C.F.R.

---

[2] In most cases, the court "consider[s] only the complaint's factual allegations—not outside evidence—when deciding whether the complaint has stated a claim." *Cotterman v. City of Cincinnati*, 2023 WL 7132017, at *3 (6th Cir. Oct. 30, 2023). And in arguing that it is entitled to judgment on the pleadings because binding federal regulations require its grooming policy, Cleveland asks the court to look beyond "the complaint's four corners"—which would normally be impermissible. *Id.* But there are exceptions to this general rule, and one allows the court to consider "information subject to judicial notice." *Id.*

State law may be subject to judicial notice "if it is offered to establish the factual context of the case." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002). Here, the Ohio law requiring Cleveland to follow OSHA regulations provides such context, and Davis has not objected to the court's considering it, so the court will take judicial notice of it and proceed accordingly.

-5-

§ 1910.134(d)(2)(i).

Before a firefighter can wear an SCBA in action, however, he must pass a "fit test" to ensure that the SCBA provides sufficient respiratory protection. *Id.* § 1910.134(f). Further, OSHA instructs that fit tests "shall not be conducted if there is any hair growth between the skin and the facepiece sealing surface, such as stubble beard growth." *Id.*, App. A, Part I(A)(9). And once the fit test has occurred, fire departments may not permit SCBAs "to be worn by employees who have . . . [f]acial hair that comes between the sealing surface of the facepiece and the face." *Id.* § 1910.134(g)(1)(i)(A).

As Cleveland sees it, these regulations prohibit it from allowing bearded firefighters like Davis to wear SCBAs. Davis disagrees. Pointing to a May 2016 OSHA interpretive letter, he argues that the regulations, properly construed, allow firefighters with short beards to wear SCBAs. Cleveland is correct for two reasons.

*First*, as the Second Circuit has recognized, the regulations' plain terms "clearly require[] firefighters to be clean shaven where an SCBA seals against their face." *Bey v. City of N.Y.*, 999 F.3d 157, 166 (2d Cir. 2021). To reiterate, a firefighter cannot take a fit test "if there is *any* hair growth between the [firefighter's] skin and the facepiece sealing surface, such as stubble beard growth." *Id.*, App. A, Part I(A)(9) (emphasis added). Moreover, facial hair is *never* allowed to "come[] between the sealing surface of the facepiece and the face"—no matter its length. *Id.* § 1910.134(g)(1)(i)(A). Because this language is unambiguous, OSHA's interpretive guidance is irrelevant. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–16 (2019) (instructing courts to defer to an agency's interpretation of its own regulation only if "the regulation is genuinely ambiguous").

*Second*, even if the court were to consider the OSHA interpretive letter, the letter actually

-6-

supports Cleveland's view. In relevant part, it provides as follows:

> The Respiratory Protection standard, paragraph 29 CFR 1910.134(g)(1)(i)(A), states that respirators shall not be worn when facial hair comes between the sealing surface of the facepiece and the face or that interferes with valve function. Facial hair is allowed as long as it does not protrude under the respirator seal, or extend far enough to interfere with the device's valve function. Short mustaches, sideburns, and small goatees that are neatly trimmed so that no hair compromises the seal of the respirator usually do not present a hazard and, therefore, do not violate paragraph 1910.134(g)(1)(i).
>
> In general, however, beards present serious problems for tight-fitting facepiece respirators because their texture and density vary daily, causing unreliable respirator fit and, therefore, present a higher potential for leakage.

(Opp. Br. at PageID #144–46.)

The letter thus reaffirms that facial hair cannot "protrude under the respirator seal," regardless of its length. Further, it explains that while some types of facial hair are permissible, "beards present serious problems" and are barred. And shortly after the quoted passage, it incorporates by reference an earlier interpretive letter in which OSHA clarified that a firefighter's face must "be clean-shaven where the respirator seals against it." (Opp. Br. at PageID #145 (citing 4/1/2011 OSHA Letter, available at https://perma.cc/S94K-7AZT).) Accordingly, the letter undercuts Davis's position. *See Bey*, 999 F. 3d at 167 ("OSHA's guidance clearly indicates that firefighters must be clean shaven where a tight-fitting respirator meets the skin.").

In sum, Ohio law requires Cleveland to follow OSHA regulations. And those regulations make clear that firefighters with beards may not wear SCBAs. So where does that leave Davis's claims? The court now turns to that question.

    2.  *Race-discrimination claim*s

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Challenging Cleveland's grooming policy, Davis brings Title VII claims for disparate-treatment discrimination and disparate-impact discrimination. Disparate-treatment claims "involve intentionally discriminatory employment practices," while disparate-impact claims "involve facially neutral employment practices that have disproportionate impact on protected classes of individuals." *Serrano v. Cintas Corp.*, 699 F.3d 884, 892 (6th Cir. 2012) (internal quotation marks and citations omitted).

Cleveland argues that Davis cannot prevail on his Title VII claims because its grooming policy is required by law—and thus a "business necessity" under 42 U.S.C. § 2000e-2(k)(1)(A)(i). (Mot. at PageID #125.) In support, it cites cases in which courts have rejected firefighters' Title VII claims on this basis. *See, e.g.*, *Bey*, 999 F.3d at 170 ("Title VII cannot be used to require employers to depart from binding federal regulations."); *Jones v. City of Jacksonville*, 2023 WL 3595154, at *6 (M.D. Fla. Jan. 13, 2023) ("Legally binding federal regulations present a complete defense [to Title VII claims]."); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1119–21 (11th Cir. 1993) (holding that safety concerns made defendant city's "ban on shadow beards" a business necessity, even though the city was "not required by law to comply with OSHA standards").

Davis's sole response is that, contrary to Cleveland's view, the applicable regulations allow bearded firefighters to wear SCBAs. (Opp. Br. at PageID #136–38.) He does not address whether, if the regulations *prevent* bearded firefighters from wearing SCBAs, his Title VII claims can nevertheless survive Cleveland's business-necessity defense. Indeed, in the argument section of his opposition brief, Davis makes no reference whatsoever to his Title VII claims. His entire

argument hinges on his interpretation of the OSHA regulations—an interpretation the court has now rejected. Thus, by making no further attempt to salvage his Title VII claims, Davis tacitly concedes that they cannot survive if the court adopts Cleveland's view of the OSHA regulations (as it has). *See Ctr. For Biological Diversity v. Rural Utilities Serv.*, 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009) (citing *Humphrey v. United States AG Office*, 279 F. App'x 328, 331 (6th Cir. 2008)) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion."). And in any event, the court finds that Cleveland's policy is in fact based on business necessity. Accordingly, the court grants judgment on the pleadings to Cleveland on Davis's race-discrimination claims.[3]

### 3. *Disability-discrimination claims*

Although Davis purports to allege various theories of disability discrimination in his Complaint, his opposition brief makes clear that he is pursuing only a failure-to-accommodate claim. (*See* Opp. Br. at PageID #139–40 (referring repeatedly to his "failure to accommodate claims").) To state such a claim—which arises under 42 U.S.C. § 12112(b)(5)(A)—Davis must allege, among other things, that he requested an accommodation for his PFB, and that Cleveland "failed to provide a reasonable accommodation thereafter." *Caldwell v. MGM Grand Detroit, LLC*, 2024 U.S. App. LEXIS 434, at *6 (6th Cir. Jan. 5, 2024) (citing *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022)).

---

[3] Because "federal law precedent interpreting Title VII" guides the interpretation of Ohio's race-discrimination statutes, *Ohio Civil Rights Comm'n v. David Richard Ingram, D.C.*, 630 N.E.2d 669 (Ohio 1994), Davis also fails to state a claim for race discrimination under Ohio law.

Cleveland argues that Davis's requested accommodation—that he be permitted to maintain a short beard—was *per se* unreasonable because providing it would have required Cleveland to contravene binding OSHA regulations. The court agrees. As the Second Circuit has held, "[a]n accommodation is not reasonable within the meaning of the ADA if it is specifically prohibited by a binding safety regulation promulgated by a federal agency." *Bey*, 999 F.3d at 168. Indeed, that is why the ADA's implementing regulations recognize "a defense to a charge of [disability] discrimination . . . that a challenged action is required or necessitated by another Federal law or regulation, or that another Federal law or regulation prohibits an action . . . that would otherwise be required." 29 C.F.R. § 1630.15(e). To rule otherwise would force Cleveland "to pick between ADA liability on the one hand and administrative penalties on the other." *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 416 n.2 (3d Cir. 2017).

The Supreme Court's decision in *Albertson's, Inc. v. Kirkingburg* reinforces the point. 527 U.S. 555 (1999). There, a grocery-store chain fired a truck driver whose vision fell short of "basic [Department of Transportation ("DOT")] standards." *Id.* at 559. The driver later obtained a waiver from the DOT, but the grocery-store chain refused to rehire him. *Id.* at 560. Ultimately, the Court rejected the driver's ADA suit. The chain was free to disregard the waiver, the Court explained, because the DOT vision standard was a binding federal regulation that "contain[ed] no qualifying language about individualized determinations." *Id.* at 570.

The Court's reasoning in *Albertson's* applies here. *Bey*, 999 F.3d at 168 ("[A]n employer should not be required to defend its adherence to a binding federal safety regulation, even when that regulation conflicts with the goals of the ADA."); *Jones*, 2023 WL 3595154, at *5 ("This is a situation, as discussed in *Albertsons's* and *Bey*, when the guarantees of the ADA must yield to a

-10-

federal safety regulation."). Simply put, Cleveland must be able to enforce the OSHA regulations as written, lest it "be required on a case-by-case basis to reinvent the Government's own wheel." *Albertson's*, 527 U.S. at 577.

Finally, Davis argues in the alternative that even if allowing him to maintain a short beard would have been an unreasonable accommodation, Cleveland could have accommodated him by reassigning him to a position that did not require use of a SCBA. (Opp. Br. at PageID #139.) To be sure, the ADA defines "reasonable accommodation" to include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). But to prevail on such a theory, a plaintiff must allege "either that he requested, and was denied, reassignment to a position for which he was otherwise qualified or that he requested and was denied some specific assistance in identifying jobs for which he could qualify." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 419 (6th Cir. 2020). Davis does neither. Accordingly, the court grants judgment on the pleadings to Cleveland on Davis's disability-discrimination claims.[4]

### 4. *Equal-protection claim*

Davis sued Calvillo under 42 U.S.C. § 1983 for violating the Fourteenth Amendment's Equal Protection Clause. To state such a claim, Davis must allege that Calvillo intentionally discriminated against him because he is Black. *Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 758 (6th Cir. 2023). He can do so in two ways. The first, "most straightforward" way is to allege specific facts evincing discrimination, such as "a statement" by Calvillo that Davis was relegated to light duty "out of racial animus." *Stanford v. Northmont City*

---

[4] Because "Ohio's disability discrimination law parallels the ADA in all relevant respects," *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008), Davis also fails to state a claim for disability discrimination under Ohio law.

-11-

*Sch. Dist.*, No. 23-3203, 2023 WL 6389624, at *4 (6th Cir. Oct. 2, 2023). The second way is to allege "that other, non-Black" firefighters "were treated differently despite violating the same" grooming policy—so long as they are "similarly situated 'in all relevant respects'" to Davis. *Id.* (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011); *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)

Davis's Complaint contains no such allegations. As an initial matter, Davis alleges no facts suggesting that Calvillo (or anyone) disciplined him out of racial animus; indeed, his lone allegations concerning intentional discrimination are wholly conclusory. (*E.g.*, Compl. ¶ 140 ("Defendants knew that their grooming policy was a form of intentional discrimination against Black/African American men because they knew that it would only affect Black/African American men . . . .").) Likewise, Davis fails to allege that Calvillo (or anyone) treated bearded, non-Black firefighters differently than him.[5] So Davis cannot maintain an equal-protection claim against Calvillo. *See Hamilton v. City of N.Y.*, 563 F. Supp. 3d 42, 56 (E.D.N.Y. 2021) (finding no discriminatory intent where fire department's "grooming policy applie[d] to all firefighters without exception").

    5.    Monell *claim*

Davis's *Monell* claim against Cleveland is not well-taken, either. After all, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Thus, because Davis fails to plausibly allege that Calvillo violated

---

[5] Davis does allege that Cleveland "permitted police officers to maintain facial hair as an accommodation for PFB." (Compl. ¶ 66.) Needless to say, though, police officers are not similarly situated "in all relevant respects" to firefighters. *Rondigo*, 641 F.3d at 682.

his rights under the Equal Protection Clause, "the municipal liability claim also fails." *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019).

## IV. CONCLUSION

Davis brings a sympathetic case. He allegedly suffers from a skin condition that afflicts Black men only and was forced to leave the firefighting force—his career of nearly two decades—through no fault of his own. Nevertheless, the court is constrained by the law with respect to the claims he pled.

For the foregoing reasons, the court grants Defendants City of Cleveland and Angelo Calvillo's Motion for Judgment on the Pleadings (ECF No. 17).

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

February 28, 2024